570    UNITED STATES ex rel. REINACH v. CORTELYOU.

Syllabus..                           [28 App.

---

# UNITED STATES EX REL. REINACH *v.* CORTELYOU.

---

UNITED STATES MAILS; POSTAGE RATES; PERIODICAL PUBLICATIONS; OFFICERS; MANDAMUS.

1. Although a publication complies formally with the conditions of sec. 14 of the act of Congress of March 3, 1879 (20 Stat. at L. 355, chap. 180, U. S. Comp. Stat. 1901, p. 2647), it will not be entitled to second-class postage rates, unless, as required by sec. 10, it is a "periodical publication," which means that it shall not only have the feature of periodicity, but shall be a periodical in the ordinary sense of the term.

2. The duty imposed by law upon the Postmaster General, of determining whether a publication is a "periodical publication," and as such entitled to second-class postage rates, is not a mere ministerial one, but involves the exercise of some discretion, which will not be interfered with by. the courts unless clearly wrong.  (Following *Payne* v. *Bates & G. Co.* 22 App. D. C. 250.)

3. A foreign publication known as *Wiener Chic*, devoted to dressmaking, and consisting, among other things, of colored fashion plates, with printed descriptions thereof, showing costumes, patterns of which are sold by the publishers, is not so clearly a periodical publication as to justify the issuance of the writ of mandamus to compel the Postmaster General to admit it to the mails as second-class mail matter.

No. 1708.   Submitted December 4, 1906.   Decided January 8, 1907.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia dismissing a peti-

tion for a writ of mandamus to the Postmaster General direct-
ing him to admit a certain publication to the mails as second-
class mail matter.                           .                *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action of mandamus [by Sigmund Reinach,
Agent] to compel the admission to the United States mail, as
mailable matter of the second class at the rate of postage pre-
scribed therefor by law, of a certain publication known as
*Wiener Chic.*

The petition alleges that the place of publication of *Wiener
Chic* is Vienna, Austria, and that the same is published at
stated intervals as frequently as twelve times per year, each
number being consecutive and bearing a date of issue. It is
thus described:

"It is formed of printed paper sheets, without board, cloth,
leather, or other substantial binding, such as distinguish
printed books for preservation from periodical publications. It
is originated and published for the dissemination of informa-
tion which is useful to the art and special industry of dressmak-
ing, and is devoted to said art and industry, and has a legiti-
mate list of subscribers throughout Europe and the United States
and elsewhere. The publication thereof was commenced about
fifteen years ago, and has thence continued without interrup-
tion until the present time. Its regular subscribers in the Unit-
ed States and Canada number about 1,800. It is not designed
primarily for advertising purposes, nor for free circulation,
nor for circulation at nominal rates. Single copies are not
for sale by the publishers or by their authority, but said peri-
odical is sold by the publishers and their agents to subscribers
at the price of $14 per year. The text is in English, German,
and French, and is descriptive of certain inventions in the art
of dressmaking. It is accompanied by plates as shown in said
exhibit No. 1, which said plates are germane to the text
of the publication, and illustrative of the text, and contain
matter added or supplemented to complete the text, but not in-

572    UNITED STATES ex rel. REINACH v. CORTELYOU.

Statement of the Case.                              [28 App.

serted in the text itself for want of space, and for greater convenience, and are issued with the publication as parts thereof. The said plates are .in colors and serve to complete, and are in fact necessary to complete, and constitute an essential part of the descriptions of said several inventions. The publication in each number also contains matter which is not only descriptive of the costumes illustrated in the,plates, but also a very valuable fashion report in English and German, giving the details of the new styles in Europe and the drift or tendency of styles in the great fashion centers. This report is necessary for dressmakers and other subscribers for the publication. It is a foreign periodical of the same general character as those admitted as second-class mail matter in the United States."

It is further alleged that the publication was admitted to the mails as second-class matter in 1898, and transmitted as such until about November 28, 1905, when, upon hearing after notice, the permission was revoked by the Postmaster General. The return to the rule to show cause contains the following recital of the grounds upon which respondent relies for refusing admission of the publication to the mails as second-class matter:

"Defendant admits that the text is in English, German, and French, but he denies that the same is descriptive of certain inventions in the art of dressmaking. On the contrary, he says that the said text is descriptive of certain designs or patterns for women's dresses, which patterns or designs are for sale by the publishers of said publication. He denies that the said publication is accompanied by plates, or that the said plates are germane to the text and illustrative of the text, or that they contain matter added to supplement or complete the text, and not inserted in the text itself for want of space, time, or greater convenience. He further denies that said plates serve to complete, or are in fact necessary to complete, an essential part of the descriptions of any inventions whatsoever.    *    *    *

"On the contrary, this defendant avers and charges the truth to be that said publication, known as *Wiener Chic,* consists and is made up of a cover bearing the title, number, date, and other

marks and signs thereof, in which are inclosed an indefinite number of colored fashion plates designed and intended for separate use; that such fashion plates constitute in effect designs and instruments of trade for use by persons engaged in the business of dressmaking; that there is no true text in said publication, of which said plates are illustrative, or to which they are germane; but that so much text as is found on the loose pages, and the back, and inside of the cover thereof, are mere descriptions or designations of the plates aforesaid, which constitute the substantial contents of said publication. This defendant denies that said publication is accompanied by plates, or that said plates are germane to the text of the publication, and illustrative of the text, or that they contain matter added to the said text to complete the same. On the contrary, he avers that the said text is purely incidental and subsidiary to the said plates, and that the said publication, in substance and fact, contains no text.

"This defendant denies that said plates accompany each number as supplementary matter. On the contrary, he avers that the said plates are in no sense supplemental to the regular issues of such publication, but in fact constitute such issue themselves; that they are not matter supplied in order to complete that to which they are added or supplemented, nor are they matter omitted from the regular issue for want of space, time, or greater convenience. He also avers that the said plates are independent and complete in themselves, and that the description or designation thereof in the supposed text of the said publication is merely colorable.

"He further avers that the so-called fashion report printed on the inside of the cover of the said publication is relatively insignificant, and forms no substantial part of the said publication, the main substantial contents of which, as heretofore stated, consists of the fashion plates aforesaid, which are matter of the third class. He likewise avers that each number of the said publication contains, along with the said loose plates, a loose dress pattern intended for use in the actual cutting of garments, and that the said pattern is matter of the fourth class.

574    UNITED STATES ex rel. REINACH v. CORTELYOU.

Statement of the Case.                    [28 App.

And that, even if there were a text to the said publication, entitling it to admission as second-class matter, which he denies, the said pattern, inclosed as aforesaid, would render the said publication chargeable with postage at the fourth-class rate.

"This defendant denies that the said publication is a foreign newspaper or other periodical of the same general character as those admitted to the second class in the United States. On the contrary, he avers that the said publication is not, in fact, a newspaper or other periodical publication at all.

"The allegation that such publication is not designed primarily for advertising purposes, this defendant, answering in respect of his official knowledge of the acts and adjudications of the Postoffice Department, can neither admit nor deny, for the reason that the same was not adjudicated in the hearing in the Postoffice Department, and was not necessary to be adjudicated, because the determination that the publication was not a newspaper or other periodical of the same general character as those admitted in the United States rendered an inquiry into any additional questions superfluous. He avers that further investigation tends to show that said publication is designed primarily for advertising purposes, in that it is designed to advertise the business of the publisher, to wit, the manufacture and sale of dress patterns for use in making women's dresses, and that the main purpose of such publication is to induce dressmakers to order patterns therein described. And this defendant says that the allegation made in said petition for the purpose of obtaining a writ of mandamus against this defendant puts in issue the said question whether the publication is designed primarily for advertising purposes; and he is advised and submits that no writ of mandamus may lawfully issue to command this defendant to transport through the mails copies of the said publication at the second-class rate unless it is determined that said publication complies in all respects to the requirements imposed by the statutes of the United States as a condition precedent to such transmission, one of which is that the publication shall not be designed primarily for advertising purposes."

A stipulation was filed agreeing that the number of May,

1906, of *Weiner Chic,* filed therewith, substantially represents. the issues of said publication, and may be considered as evidence.    It was also agreed that since the number of August, 1905, the loose dress pattern mentioned in the answer has been. sent to subscribers, separately as fourth-class mail matter, and not under the same cover with other parts of the publication,. "although in the said publication such pattern is advertised as. included in the subscription contract."    It was also agreed that the publishers and their agent, the relator, sell and furnish upon request dress patterns intended for use in the actual cutting and making of the garments described and illustrated in the publication.

The case was then submitted upon the .petition and answer· and the aforesaid stipulation and exhibits; and the judgment was that the petition be dismissed, with costs.

*Mr. Lorenzo A. Bailey* and *Mr. Ivan Heideman* for the appel-, lant.

*Mr. Henry H. Glassie,* Special Assistant to the Attorney General, for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

While the publication under consideration complies formally with the conditions requisite, under sec. 14 of the act of March 3, 1879, to admission to the mails as second-class matter, it does not follow therefrom that it is a "periodical publication" within the meaning of secs. 7 and 10.    That section 14 "does not define a periodical, or declare that upon compliance with these conditions the publication shall be deemed such.    In other words, it defines certain requisites of a periodical, but does not declare that they shall be the only requisites.    Under sec. 10 the publication must be a 'periodical publication,' which means, we think, that it shall not only have the feature of periodicity, but that it shall be a periodical in the ordinary

576    UNITED STATES ex rel. REINACH v. CORTELYOU.

Opinion of the Court.                    [28 App.

meaning of the term." *Houghton* v. *Payne,* 194 U. S. 88, 96, 48 L. ed. 888, 889, 24 Sup. Ct. Rep. 590.

When, therefore, admission to the mails is demanded for a publication complying with the formal conditions of sec. 14, at a rate of postage prescribed for matter of the second class, it becomes the duty of the Postmaster General to examine the same, and from such examination, together with any other facts that he may ascertain, to determine the class of mail matter to which it properly belongs.    While the question for determination is generally one of law, depending upon the comparison of the publication with the provisions of the law, the duty imposed is not a mere ministerial one, but involves the exercise of some discretion.    This exercise of discretion will not be interfered with by the judicial tribunals unless clearly satisfied that it was wrong.    *Payne* v. *Bates & G. Co.* 22 App. D. C. 250, 252. 194 U. S. 106, 107, 109, 48 L. ed. 894, 895, 24 Sup. Ct. Rep. 595.    In the last case cited, Mr. Justice Brown, after reviewing many cases involving the review of the action of executive officers, summarized the rule upon the subject as follows: "That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right, of so doing."

It would serve no useful purpose to discuss the several features of the publication in question, as shown in the copy sent up with the transcript as a part of the case.    We think it sufficient to say that, from its examination in the light of the arguments addressed to it, we are not convinced that *Wiener Chic* is a periodical in the ordinary meaning of the term.    Whether it is such a periodical, or only a periodical "house organ,"—to adopt an expression used on the argument,—is, at least, a matter of grave doubt.

It follows that the court below was right in refusing to compel the Postmaster General to disregard the conclusion arrived at

D. C.]                          Syllabus.

in the discharge of his official duty, and readmit the publication to the mails as second-class matter.

The judgment will therefore be affirmed, with costs.

*Affirmed.*