**Frederick B. EISEMAN, Jr., et al., Plaintiffs,**

v.

**Cecil D. ANDRUS, etc., et al., Defendants.**

**No. Civ. 77–177 Pct. WPC.**

United States District Court, D. Arizona.

July 12, 1977.

Bruce Meyerson, Arizona Center, for Law in the Public Interest, Phoenix, Ariz., for plaintiffs.

Richard S. Allemann, Asst. U.S. Atty., Phoenix, Ariz., for defendants.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

The Grand Canyon is a National Park through which runs the Colorado River. Defendants are charged with the administration of the Park including the River and its recreational use by the public at large.

"The Secretary of the Interior is responsible for maintaining our national parks, and for providing facilities and services for their public enjoyment through concessionaires. or otherwise." *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission, et al.,* 393 U.S. 186, 187, 89 S.Ct. 354, 355, 21 L.Ed.2d 334 (1968).

Because of the greatly increased and intensified use of the Colorado River for rafting and boating, and the resulting ecological threat to the River, the National Park Service began to limit the number of user days[1] allowed in 1973. River use was, accordingly, limited to 96,600 user days as part of an interim management plan. Of the total allowable use, 89,000 user days were allocated to commercial users and 7,600 were allocated to non-commercial users. Both the total allowed use and the allocation of that use provided by interim management plan are based upon the *historical use* of the River and the best information available.

The interim management plan is to remain in effect until adequate information about the River and its environs can be gathered in connection with the preparation of a final river management plan. This information has been gathered and developed as part of an extensive research program commenced by the National Park Service in 1973.

It should be noted that the 1972 allotment for allowable commercial passenger user days was 105,000, but that the interim management plan set the commercial passenger days at 89,000 which was based on the approximate level of *actual* use in 1972. This reduction in allotment was challenged

1. The term user days, means the number of days or portions thereof that each visitor spends on the River; e. g., one visitor spending 5 days on the River amounts to 5 user days.

by some of the commercial operators in *Western River Expeditions, Inc. v. Morton,* Civil No. C–125–73 (D. Utah, June 4, 1973). Chief Judge Ritter dismissed the action, holding that the Department of the Interior and the National Park Service had acted within their statutory authority, and upon a reasonable and rational basis in connection with their management of river-running activities. *Wilderness Public Rights Fund v. Kleppe,* No. Civ. 76–187 CFP (N.D. Cal. Dec. 16, 1976).

The level and allocation of permitted use of the River, established by the interim management plan, were never intended as permanent. They are to be utilized only until the River research programs are completed and a final river management plan is adopted after public hearings and comment. Based upon the information then available, use of the River may be adjusted, if appropriate. Since the research program is not yet complete, defendants are continuing the present limitation and allotment of use. Therefore, the existing concession permits are being extended for a period not to exceed three years. They may be terminated or modified at any time prior to the end of three years. Thus, the use of the River can be adjusted and re-allocated, if appropriate, just as soon as the final management plan is ready for implementation.

The plaintiffs are persons who, because of excess demand for the limited number of non-commercial permits, have been denied permits to run the River privately rather than through the services of a park concessionaire. There is no question raised as to their equipment or qualifications for such a permit. Plaintiffs do not question the right of defendants to limit total user days or the total annual number of permits. On various grounds they contest the defendants' authority to allocate, as they have, the number of permits as between commercial and non-commercial users. These will be treated separately below as the claims were stated by plaintiffs in their briefs.

Jurisdiction to hear and decide the issues raised is apparently and correctly conceded by defendants. *Wilderness Public Rights Fund v. Kleppe, supra.*

A. *The Secretary's action to allocate usage is void because there was no compliance with the Administrative Procedure Act.*

And B. *Further that allocating usage is outside the defendants' jurisdiction and is not within the discretion of the Secretary of the Interior.*

█ Plaintiffs claim that the allocation of user days between commercial and non-commercial users was rule-making. Defendants claim compliance with the APA was not required. The Court agrees with the contention of defendants.

Pursuant to congressional authority (16 U.S.C. sections 1 and 3) the Secretary has promulgated regulations for the protection of park resources and for the enhancement of public enjoyment. In subsection (3) of 36 C.F.R. section 7.4(h) the National Park Service expressly receives the right to limit the number of trip permits and the number of persons traveling on such Colorado River trips:

(3) No person shall conduct, load or guide a river trip unless such person possesses a permit issued by the Superintendent, Grand Canyon National Park. The National Park Service reserves the right to limit the number of such permits issued, or the number of persons traveling on trips authorized by such permits when, in the opinion of the National Park Service, such limitations are necessary in the interest of public safety or protection of the ecological and environmental values of the area.

In the view of the Court this authority is broad enough to authorize defendants to choose the allocation scheme in dispute.

Pursuant to these regulations the "interim management plan", referred to hereinabove, was implemented. Under the plan, total use of the River for rafting is "frozen" at 96,600 user days. This represents the actual use of the River during the 1972 river-running season. Of the total allowable use, 89,000 user days are allocated to

commercial permittees and 7,600 are allocated to private permittees. Thus, both the total use and the allocation of that use are based on the historical use of the River.

 As noted, plaintiff herein does not contest the power and authority of the Park Service to restrict the *total use* of the River to historical use levels, but it alleges that the *allocation* of the user days, based on historical levels, is in excess of the authority of defendant[2] and not rationally based or reasonably related to a legitimate governmental objective.

It is clear that the Secretary of Interior, acting through the National Park Service, has the authority to determine what use of park resources are appropriate public uses, and what proportion of a park's limited resources are available for such use (16 U.S.C. § 3). The prerogative of secretarial determination was recognized by the Court in *Udall v. Washington, Virginia and Maryland Coach Co.*, 130 U.S.App.D.C. 171, 398 F.2d 765 (1968), *cert. den.*, 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed.2d 561.

Here the task of weighing the competing uses of federal property has been delegated by Congress to the Secretary of the Interior. The balance which he strikes will not be judicially upset unless it is arbitrary or beyond his authority. *United States v. Shimer*, 367 U.S. 374, 381–382, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), quoting *Bates & Guild Co. v. Payne*, 194 U.S. 106, 108–109, 24 S.Ct. 595, 48 L.Ed. 894 (1904). *Udall v. Washington, Virginia and Maryland Coach Co.*, *supra*, at 769.

In this case, a bus company challenged the validity of regulations concerning the use of the George Washington Memorial Parkway which permitted unlimited commuter bus service on the southern sector of the parkway, but which forbade regular commuter bus service on its northern sec-

tor, except for direct, nonstop service to Langley, Virginia and return. The Court went on to say that its inquiry was ended with the finding of a rational basis for the regulation.

> Where administrative control has been congressionally authorized the judicial function is exhausted once there is found some "rational basis" for the action taken. *Ibid.*

Citing *Mississippi Valley Barge Line Co. v. United States*, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934), and *Thor-Westcliffe Development, Inc. v. Udall*, 114 U.S.App.D.C. 252, 314 F.2d 257, *cert. den.*, 373 U.S. 951, 83 S.Ct. 1681, 10 L.Ed.2d 706 (1963). *See also Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

The Court concluded that a rational basis existed for the discrepancy in the regulation of commuter bus service in the southern and northern portions of the parkway and that it was reasonably predicated, in part, upon *historical* use.

Under the holding in the *Washington, Virginia and Maryland Coach Co.* case, the actual use made of the Colorado River by commercial and non-commercial users during 1972 provides a valid and rational basis for the allocation of river use pending completion of the National Park Service's formal research and planning effort and public hearings thereon.

The Court concludes that the allocation of usage in the interim plan has a rational basis, is within the Secretary's discretion, and furthers the legitimate governmental objective of providing for the greatest possible public enjoyment of the river experience subject to ecological, environmental and public safety limitations. Running the River is not like standing on a viewpoint and enjoying the Grand Canyon scene. It is clear that there is a far greater demand to ride the River with a concessionaire's professional pilot and guide than demand for

---

**2.** Plaintiffs concede in their reply brief that the court held in *Wilderness Public Rights, supra,* that the allocation formula was not an abuse of discretion. This Court agrees for the reasons hereinafter stated. While counsel argue, and for purposes of this opinion the Court assumes, that the issue of the *authority* of defendants to make the allocation complained of was not an issue in that case, certainly that court impliedly found such authority in order to determine there was no abuse of discretion.

non-commercial, private trips. This is true historically and because of the obvious dangers involved in running a wild river and the limited number of people with the equipment, experience and qualifications to "go it alone". Thus, as said above, the allocation seems to permit the largest possible public enjoyment of the River subject to the necessary over-all limitations on annual total user days.

C. *Allocating usage between private and commercial users violates the Fifth Amendment of the United States Constitution.*

Plaintiffs claim that the different treatment accorded commercial and non-commercial permittees is in violation of their constitutional rights to equal treatment. In the view of the Court there is a rational, even necessary, basis for the two classifications and their different treatment. Commercial users are simply buying a conducted tour with qualified, experienced, properly equipped professionals under contract with and subject to supervision by the defendants. Because of the dangers inherent in the river run as well as ecological and environmental considerations, it is necessary that non-commercial users meet entirely different qualifications than commercial users. The forms and the information required therein and the procedures followed in applying for and granting non-commercial user permits are reasonably related to assuring that such permittees have the proper qualifications required for members of this much smaller class.

That there may be an administratively feasible alternative plan for issuance of permits which is favored by plaintiffs is no basis to upset a different rationally-based plan chosen for the interim period by the Secretary. This issue should be addressed through comments and at the public hearings which will be held on the new plan presently being prepared.

D. *The research studies have no connection whatsoever to the issue of allocation of usage.*

While there is a dispute on this issue it is immaterial in the view of the Court. If there is merit in this contention it is premature. This question cannot be determined until the new proposed plan is published and public comment invited. The sufficiency and significance of such studies and the validity of the use made of them and conclusions drawn therefrom will be at the heart of the hearings to be held after the proposed plan is made public.

The parties have filed and fully briefed cross-motions for summary judgment. The Court finds no substantial dispute as to any material fact.

IT IS ORDERED:

1. Plaintiffs' motion for summary judgment is denied.

2. Defendants' motion for summary judgment is granted.