The NATIONAL RIFLE ASSOCIA-
TION OF AMERICA, Plaintiff,

v.

UNITED STATES POSTAL SERVICE
et al., Defendants.

Civ. A. No. 75–303.

United States District Court,
District of Columbia.

Feb. 2, 1976.

John J. Wilson, Jo V. Morgan, Jr., Washington, D. C., for plaintiff.

Peter Schaumber, Asst. U. S. Atty., Civil Div., Washington, D. C., for defendants.

MEMORANDUM OPINION

FLANNERY, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment. The action arises out of a series of decisions by the defendants with regard to the postal rates applicable to two of plaintiff's publications, as well as to other general mailings. Specifically, the United States Postal Service took action to:

(a) deny the application of the National Rifle Association of America (NRA) for special second class postal rates for its new publication *The American Hunter;*

(b) revoke the special second class rate previously authorized for NRA's publication *The American Rifleman;*

(c) revoke NRA's non-profit third class permit authorized at Washington, D. C.

The following is a review of the substance and procedure of the decisions by the Postal Service.

On September 25, 1973, plaintiff applied for regular second class privileges and for special second class rate authorization for *The American Hunter.* On April 5, 1974, Darwin Sharp, Manager, Office of Mail Classification (OMC) of the Postal Service, notified NRA that regular second class mail privileges for *The American Hunter* had been approved, but that the request for special second class rates had been denied. At this time, Sharp also notified plaintiff of the intent of the Postal Service to revoke NRA's special third class rate authorization, and its special second class rates for *The American Rifleman.* Plaintiff represents that continued authorization by USPS for special second

and third class rates would amount to a savings to NRA of approximately $900,-000 per year. The excess paid by NRA since the revocation of the special rates is being escrowed pending final disposition of this action and any appeals therefrom.

As grounds for the April, 1974 decision, Sharp's letter to NRA stated that there was no authorized category of organizations in the postal law into which NRA reasonably may be included to qualify it for special rates. To be eligible for special rates under Sections 132.1 and 134.1 of the Postal Service Regulations (39 C.F.R. §§ 132.1, 134.1 (1974)), the primary reason for the existence of the non-profit organization in question must fall within one or more of the categories named and defined in Section 134.5 of the Regulations. 39 C.F.R. § 134.5 (1974). Since, in the view of the Office of Mail Classification, "the primary purposes and objects as stated by the bylaws of the National Rifle Association of America are to promote social welfare", which is not a qualified purpose within the terms of Section 134.5(a), NRA was not entitled to special rates. Sharp's letter notes that while the NRA bylaws list education, a qualified purpose, as part of its purposes and objects, education is not the primary object of the organization, as required by the regulation, and thus qualification on the basis of NRA's educational purposes must fail.

The letter goes on to explain that the Office of Mail Classification considers NRA an "action organization", which provides a further ground to deny NRA the special rates under Section 134.5 of the Postal Service Regulations. An organization is an action organization if a substantial part of its activities consists of attempting to influence legislation by propaganda or otherwise. 39 C.F.R. § 134.5(c) (1974). For this purpose, the

OMC applied the standard set out in the regulations that an organization will be regarded as attempting to influence legislation if the organization contacts, or urges the public to contact, members of the legislative body for purposes of proposing, supporting, or opposing legislation, or advocates the adoption or rejection of legislation. Thus, Sharp's letter articulated alternative reasons for denial and revocation of the special rates. First, the purposes of NRA are not primarily educational, and by implication do not otherwise qualify under Regulation Section 134.5(a).[1] Secondly, NRA is disqualified as an action organization.

NRA was permitted to submit further information bearing upon its qualification for special rates for reconsideration by the OMC. Following the submission of material including NRA publications, bulletins, and corporate documents, as well as legal arguments contained in letters to Sharp by NRA's counsel, Sharp met and discussed the issues with plaintiff's counsel and the NRA Vice President. In a letter of August 7, 1974, Sharp renewed the position of the OMC that NRA was not entitled to special rates. Sharp indicated that he has "reviewed the complete file in the case," and provided a detailed explanation of reasons for the decision. He again afforded NRA another opportunity to submit new evidence to show that the decision was erroneous.

NRA did submit further evidence, particularly with regard to the extent of its legislative activities. On September 25, 1974, Sharp issued his final opinion rejecting NRA's claim to entitlement to special second and third class rates. His letter to NRA's counsel stated, in part:

There is nothing in the material you submitted that would support a finding that the NRA is either an educational, a scientific or a philanthropic organization. I agree with you that if

---

1. Section 134.5(a) provides that organizations whose primary purpose is religious, educational, scientific, philanthropic, agricultural, labor, veterans', or fraternal, as defined in 134.5(b), may qualify for the special rates. NRA argued before the Postal Service that its primary purposes were a combination of educational, scientific, and philanthropic.

an organization is both philanthropic and educational, it would qualify for the special rates. Such is not the case with NRA.

With regard to the extent of NRA's legislative activity and the question of whether NRA is an action organization, I must conclude the NRA is an action organization, and the evidence you submitted does not portray an accurate or complete picture of the extent of the legislative activities engaged in by the NRA.

No further appeal was permitted the plaintiff.

NRA basically makes four arguments in seeking to have this court set aside the decision of the Office of Mail Classification that it is not eligible for special second and third class mailing rates pursuant to 39 U.S.C. § 4358(j)(2) (1975 App.), 39 U.S.C. § 4452(d) (1970) and 39 C.F.R. §§ 132.1(b)(2)(iv), 134.5 (1974). First, plaintiff argues that there is not substantial evidence in the record to sustain the finding that NRA is not primarily an educational, scientific, and philanthropic organization, or that NRA is an action organization, thus rendering the denial and revocation "arbitrary and capricious." Secondly, the OMC committed an error of law in interpreting the definitions of qualified organizations in Section 134.5(b) of the Regulations. Thirdly, the Postal Service denied NRA a minimum of due process by failing to provide a fair and impartial forum for the determination of NRA's rate eligibility. Finally, the action organization regulation is an invalid exercise of authority on the part of the Postal Service because it constitutes an usurpation of congressional rate-making power.

*Scope of Review.*

■■ Review in this court of the administrative determination is limited to an analysis of the administrative record to discern whether the decision is arbitrary and capricious. If it is not, the administrative determination must be upheld. *See American Bible Society v. Blount,* 446 F.2d 588, 597 (3d Cir. 1971);

*Doehla Greeting Cards, Inc. v. Summerfield,* 97 U.S.App.D.C. 29, 227 F.2d 44, 46–47 (1955); *Sierra Club v. United States Postal Service,* 386 F.Supp. 1102, 1104 (N.D.Cal.1973); *Dell Publishing Co. v. Summerfield,* 198 F.Supp. 843 (D.D.C. 1961), *aff'd sub nom. Dell Publishing Co. v. Day,* 113 U.S.App.D.C. 1, 303 F.2d 766 (1965). In view of the decision of this court to remand this action to the Postal Service for a hearing before an administrative law judge, a determination at this time of whether the decision of the Manager of the Office of Mail Classification was arbitrary or capricious would be premature. However, it is important to note for purposes of the instant decision that one prerequisite of the standard of review to be applied is a complete and adequate administrative record, compiled by way of procedures that comport with due process. *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *United States v. International Harvester Co.,* 387 F.Supp. 1338, 1341 (D.D.C.1974). As discussed below in the treatment of the due process issue, the court cannot properly apply a limited standard of review of administrative decisions without the assurance of an impartial and thoroughgoing review by the administrative decisionmaker, with a record that reflects a full opportunity for interested parties to present their evidence, and to rebut unfavorable evidence introduced by the agency.

*Due Process.*

While NRA was provided with various opportunities to submit evidence in support of its eligibility for special rates, the procedures followed by the Mail Classification Division were indeed informal. Upon filing by NRA of its application for special second class privileges for *The American Hunter,* the OMC undertook to review NRA's general eligibility for special second and third class rates. After the initial decision by the Division Manager, Mr. Sharp, the plain-

tiff was permitted to submit further material bearing upon its qualifications for special rates for reconsideration by Sharp, despite the absence in the Postal Service Regulations of a right to appeal an adverse decision on special second and third class rates.[2]

Plaintiff contends that reconsideration by the same person who initially decided NRA's rate eligibility, and who also had substantial responsibility for drafting and enforcing the applicable regulations, without a reasonable opportunity to present their arguments in an appeal to a disinterested, impartial decisionmaker, was a denial of due process because of bias on the part of Mr. Sharp. Plaintiff argues that the diverse nature of his duties prevented Sharp from being impartial within the requirements of the law.

▮ It is well settled that the combination of functions in the same official or agency is not, without more, a violation of due process. *See Withrow v. Larkin*, 421 U.S. 35, 47–48, 95 S.Ct. 1456, 43 L.Ed.2d 172 (1975); *Pangburn v. CAB*, 311 F.2d 349 (1st Cir. 1962). In *Withrow v. Larkin*, the Supreme Court delineated the burden of persuasion for proving bias as the result of a combination of functions. The Court stated that the party alleging unconstitutional bias

> must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same indi-

viduals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

421 U.S. at 47, 95 S.Ct. at 1464. NRA has set forth certain conclusions regarding the effect of Mr. Sharp's various duties, conclusions which are contrary to the reasoning in *Larkin*. While the plaintiff would have the court presume that Sharp's position makes a fair hearing impossible before him as a general matter, the preferable rule, referred to in *Larkin*, is that as long as the party challenging fairness demonstrates nothing more than a combination of functions, and does not prove "special facts and circumstances" that present a "risk of unfairness [which] is intolerably high", the court should uphold the process. *Id.* at 58, 95 S.Ct. at 1470.[3] Thus, the fact that the Manager of the Mail Classification Office has carried out various duties of drafting regulations governing rate eligibility, overseeing the investigation of ineligibility, and rendering the final decision on NRA's qualification for special rates does not, in itself, constitute a due process violation under the *Larkin* standard.

NRA has, however, introduced "special facts and circumstances" which raise a substantial question as to the procedures followed by the OMC in arriving at its final determination. In this regard, NRA relies on Sharp's response to one of its original interrogatories, which NRA offers as evidence of Sharp's prejudgment that denied the plaintiff a fair tri-

---

**2.** Denial or revocation of *regular* second class mail privileges would have resulted in an appeal to an administrative law judge if the aggrieved party were to file a timely petition. 39 C.F.R. §§ 132.3(f), 132.8(c), 954.8 (1974). A formal hearing would be afforded the appellant, incorporating the trial-type protections of Section 954 of the Postal Regulations. 39 C.F.R. § 954 (1974).

**3.** Plaintiff cites the case of *Amos Treat & Co. v. SEC*, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962), for the proposition that the appearance of unfairness resulting from a combination of functions requires reversal on due process

grounds. In that case, the court held that participation by an SEC Commissioner in a decision which was the culmination of an investigation he had worked on in his former capacity on the agency's staff violated due process. Professor Davis finds *Amos Treat* to be an "extreme case", standing for a doctrine that has "a rather limited future, if any." *See* K. Davis, Administrative Law Treatise, § 13.02, at 458, 461 (1970 Supp.). The reasoning in *Larkin* substantiates this evaluation and greatly restricts the application of *Amos Treat* to the instant case.

bunal in its administrative appeal. Answer to Interrogatory 15 filed with this court on September 12, 1975 states, in response to the question of whether Sharp already had an opinion as to the qualification of plaintiff for special second and third class rates before he began to consider any appeal:

> Prior to plaintiff's appeals plaintiff had applied for second-class mailing privileges and special second-class rates for its publication, "The American Hunter." In the review of these applications by the Office of Mail Classification, plaintiff was found not eligible for special second class rates. I, therefore, denied plaintiff's application for special rates. I also revoked the special second class rates for the publication "The American Rifleman." Since the qualification for the special second-class and special third-class rates are identical for the categories under which the National Rifle Association claimed eligibility, . . . I directed the Postmaster, Washington, D. C. to revoke plaintiff's authorization to mail at the special third-class rates. I, therefore, had the opinion that plaintiff was not qualified for the special second- and third-class rates before plaintiff's appeal was considered.

The defendants argue that this admission of an opinion is no more than a statement of unavoidable fact, and since Sharp demonstrated his continued willingness to reconsider the case, there was no undue risk of unfairness.

█ An examination of the process that resulted in the final OMC decision leads to the opposite conclusion, following the analysis of *Withrow v. Larkin, supra.* By his own admission, Mr. Sharp

had formulated a judgment on NRA's eligibility for special second and third class rates by the issuance of his proposed decision letter in April, 1974. Before that time, NRA had been afforded no opportunity to present extensive evidence in support of its qualification, particularly with regard to special third class rates and special second class rates for *The American Rifleman*, which the OMC had undertaken to review on its own initiative,[4] since only the qualification for special second class rates for *The American Hunter* had been presented to the Postal Service by NRA. Thus, Sharp, with the assistance of a Senior Mail Classification Specialist, who examines the information received, decides whether additional information is necessary, and recommends a decision to the Division Manager, notified NRA in the form of a proposed decision that his Office considered NRA to be ineligible for both special second and special third class rates. Pursuant to the terms of the letter, had NRA failed to submit additional evidence in support of its qualification within 10 days, the OMC decision would become *final* and all special rate authorizations would be rescinded. NRA thereby was forced to attempt to overcome the established presumption of its ineligibility or submit to the OMC's rate determination without any reasonable opportunity to support its eligibility.

In *Withrow v. Larkin,* the Supreme Court upheld a decision process in which the same body that investigated and presented charges against a physician for professional misconduct rendered a final decision against the physician suspending his license to practice. The Court reasoned clearly that the decision to initiate proceedings was not so likely to establish

---

**4.** The normal procedure for the revocation of special third class rates is for the local postmaster to make the initial decision, with an appeal lying to the Office of Mail Classification. 39 C.F.R. § 134.5(f) (1974). These procedures were not adhered to here because the Office determined on its own initiative under the identical standards applicable to special second class rates, that NRA did not meet the

standards of Section 134.5. Therefore, the local Washington, D. C. Postmaster was ordered by Mr. Sharp to revoke plaintiff's special third class rates. If the two step process of Section 134.5(f) is to be circumvented, that is all the more reason for the procedures of the Mail Classification Office to be more rigorous and impartial than was the case here.

a bias in the minds of the decisionmakers that they would be overly hesitant to exonerate the object of the investigation. The Court stated that "if the Board now proceeded after an adversary hearing to determine that appellee's license to practice should not be temporarily suspended, it would not implicitly be admitting error in its prior finding of probable cause." 421 U.S. at 57. In the instant case, Sharp's letter of April, 1974 can be compared with the probable cause determination of *Larkin*. Until that point, NRA had not had an opportunity to present evidence concerning its eligibility for special third class rates or for special second class rates for *The American Rifleman*. Sharp's issuance of the opinion that NRA was not entitled to special rates did not initiate an impartial adversary proceeding to either dispel or uphold a finding of probable cause. Rather, it presented NRA with a decision that would have final effect upon NRA's failure to submit further evidence within 10 days. Clearly, this is a circumstance referred to in *Larkin* where the decisionmaker may become "so psychologically wedded" to one position that he "would consciously or unconsciously avoid the appearance of having erred or changed position." *Id.* Despite Sharp's expressed willingness to reconsider NRA's qualifications, there is no question that he approached the subsequent proceedings with a well-defined predisposition. To agree with NRA, he would have had to overrule his prior proposed decision, without the direction or intervention of a disinterested tribunal.[5] This presented an intolerably high risk of unfairness to the plaintiff, in view of the substantial interest it had in the ultimate result and the undue difficulty of overcoming the prejudgment that the OMC established before providing NRA an opportunity thoroughly to present evidence on all issues.

The remedy in this case must offer NRA the opportunity fully to present its position to a tribunal that is not vulnerable to the psychological pressures that the Supreme Court addressed in *Larkin*. Given the history of administrative review of the plaintiff's qualification for special rates, a remand for further reconsideration by the OMC would be inappropriate. The court is thus left with two alternatives. One would be to grant *de novo* review here. The Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* has ruled that the court should permit *de novo* review "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." 401 U.S. at 415, 91 S.Ct. at 823. The latter situation does not apply here. As to the first situation, NRA's rate eligibility clearly is an adjudicatory matter. Thus, if the court finds that the Postal Service's factfinding procedures are inadequate, then it should grant *de novo* review.

█ The procedures invoked by the OMC to reach its decision on NRA's rate eligibility were indeed inadequate, as discussed above. However, that does not militate for the conclusion that adequate procedures are not available within the structure of Postal Service review, even for a case that has been handled in such a manner as this one. The Postal Regulations provide a procedure for appeal to an administrative law judge from an adverse decision of the Manager of the Office of Mail Classification with the possibility of further appeal to the Judicial Officer. 39 C.F.R. § 954 (1974). Although this avenue of review is not, and need not be, normally available to parties whose special rate authorization is denied or revoked, in constructing a remedy for this particular case the court should exercise its equity powers to grant the most reasonable form of relief

---

5. *See* 421 U.S. at 58 n. 25, 95 S.Ct. 1456. In *Larkin,* the Court noted that it was not faced with a situation in which review of the initial decision was by the decisionmaker himself, which presents a more substantial due process problem than was before it. *Id.; see Gagnon v. Scarpelli,* 411 U.S. 778, 785–86, 93 S.Ct. 1756, 31 L.Ed.2d 656 (1973).

within the confines of the controlling statute. *See Indiana & Michigan Electrical Co. v. Federal Power Commission,* 163 U.S.App.D.C. 334, 502 F.2d 336, 346 (1974), *cert. denied,* 95 S.Ct. 1326, *citing Ford Motor Co. v. NLRB,* 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939). Remand for a full and impartial hearing to an administrative law judge provides the second alternative to a remand to the OMC itself. Since this factfinding procedure is available within the current framework of the Postal Service review structure, even though not mandated by the Postal Regulations, it is appropriate in this case to rely on the administrative process of the regulations to rectify the unfair review procedure previously imposed upon the plaintiff. Nothing in the statute governing the Postal Service or in the regulations promulgated thereunder prohibits such review, and it is the opinion of this court, in the exercise of its equity powers, that a more thorough record can be compiled at the administrative level for resolution by an administrative law judge, with limited review of the record in this court.

[8, 9] It is important to make note that this opinion is not intended to require appeal to an administrative law judge for all OMC decisions on special second and third class rates which are adverse to the private party. Due process can be satisfied by allowing the applicant or subject of a possible revocation of special rates to fully present any evidence to the OMC, by means such as submission of documents and informal meetings, before an opinion is rendered as to eligibility. Further, if the Postal Service has uncovered any information that would disqualify the party concerned, the OMC must present this evidence to the party for rebuttal. For example, in the instant case the OMC relied on facts concerning NRA's legislative activities in its final opinion letter that were derived from sources other than NRA. There is nothing inherently wrong with this type of investigation, and the OMC cannot be expected to rely for its decision exclusively on evidence offered by the interested party. However, if the decision is ever to rely on such evidence, apart from the above considerations of bias and prejudgment, due process requires that this evidence be made available to the party for its own explanation. While the Constitution does not require a trial-type adversary hearing in the normal course of decision on eligibility for special rates,[6] it is essential both for purposes of compiling a clear and complete record for judicial review and, moreover, for allowing open-minded consideration to the party with substantial interest in the matter, that it be permitted to present its evidence in full before any form of proposed decision is issued by the OMC establishing a presumption of ineligibility. Thus, if the Manager of the Office of Mail Classification makes his decision only after adequate notice of the purpose and results of his investigation and full consideration of all the evidence submitted, due process will be satisfied. Appeal then will lie in this court under the arbitrary and capricious standard of review.

*Action Organization Regulation.*

While the issue of whether promulgation of the "action organization" regula-

---

**6.** *Compare Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (pretermination hearing required for recipient of welfare benefits) *with Richardson v. Pearles,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (no hearing required for determination of eligibility for federal disability benefits turning primarily upon medical evidence). The present case involves a situation more closely analogous to *Richardson,* where an adequate determination can be made based upon an evaluation of documentary evidence and other data. Credibility and veracity of witnesses is not a substantial concern. *See* 402 U.S. at 407–08, 91 S.Ct. 1420. Therefore, a formal hearing is not required to permit "a meaningful opportunity to test and offer facts, present perspective, and invoke official discretion." *Blackwell College of Business v. United States Attorney General,* 147 U.S.App.D.C. 85, 454 F.2d 928, 936 (1971); *see Cogar v. Schuyler,* 150 U.S.App.D.C. 238, 464 F.2d 747, 755–56 (1972). *See also Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

tion, which provided an alternative basis for the decision of the OMC, was a valid exercise of authority by the Postal Service under its enabling statute may well present a substantial legal question, the court will defer a ruling on this issue. In fact, this question may never have to be reached in this litigation. If the administrative law judge rules that NRA does not qualify as an educational, philanthropic, or scientific organization within the terms of Section 134.5(b), then the alternative basis for disqualification—that NRA is an action organization with substantial legislative activities under Section 134.5(c)(1)—becomes superfluous for purposes of review of the administrative record. If the law judge finds that NRA does qualify as educational, philanthropic, or scientific but is ineligible for special rates as an action organization, then the issue of the authority of the Postal Service to restrict the qualifications for special rates without the approval of Congress will be ripe for review in this court.