## BATES & GUILD CO. v. PAYNE.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 373. Argued March 10, 1904.—Decided April 11, 1904.

Where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they have the power, and will occasionally exercise the right of so doing.

As to what is second class mail matter, *Houghton* v. *Payne*, p. 88, followed.

THIS was a bill to compel the recognition by the Postmaster General of the right of the plaintiff corporation to have a periodical publication, known as "Masters in Music," received and transmitted through the mails as matter of the second class, and to enjoin defendant from enforcing an order, theretofore made by him, denying it entry as such. This case took the same course as the preceding ones. 31 Wash. L. Rep. 395.

*Mr. William S. Hall* and *Mr. Holmes Conrad* for appellant.

*Mr. John G. Johnson* and *Mr. Henry H. Glassie*, special assistants to the Attorney General, for the appellee.[1]

MR. JUSTICE BROWN delivered the opinion of the court.

The first number of Masters in Music was issued in January, 1903, and an application was immediately made to the Postmaster General for its admission to the mails as second class mail matter. The application was denied, and plaintiff immediately, and before the issue of another number, filed this bill. The publication purports to be a "monthly magazine,"

---

[1] This case was argued simultaneously with, and on the same briefs as, *Houghton* v. *Payne.* See p. 88, *ante*, for abstracts of arguments.

salable at twenty cents per number, and to subscribers at two dollars a year.  The first number is devoted to the works of Mozart and contains a portrait, a biography of four pages, an essay of ten pages upon his art and thirty-two pages of his music.  The preliminary page contained a notice to the effect that " Masters in Music will be unlike any other musical magazine.  Each monthly issue, complete in itself, will be devoted to one of the world's great musicians, giving thirty-two pages of engraved piano music, which will comprise those compositions or movements that represent the composer at his best, with editorial notes suggesting the proper interpretation; a beautiful frontispiece portrait, a life, and estimates of his genius and place in art, chosen from the writings of the most eminent musical critics.  The text will thus constitute an interesting and authoritative monthly lesson in musical history; its selections of music will form a library of the world's musical masterpieces, and all at slight cost.  . . . . The announcement of the contents of the February issue, which will treat of Chopin, will be found on another page."

The Postmaster General placed his refusal to allow this magazine to be transmitted as second class mail matter upon the ground that each number was complete in itself; had no connection with other numbers save in the circumstance that they all treated of masters in music, and that these issues were in fact sheet music disguised as a periodical, and should be classified as third class mail matter.

Conceding the principle established in the two cases just decided to be that the fact that books published at stated intervals and in consecutive numbers do not thereby become periodicals, even though in other respects they conform to the requirements of section 14, cases may still arise where the classification of a certain publication may be one of doubt.  Such is this case.  But we think that, although the question is largely one of law, determined by a comparison of the exhibit with the statute, there is some discretion left in the Postmaster General with respect to the classification of such publications

as mail matter, and that the exercise of such discretion ought not to be interfered with unless the court be clearly of opinion that it was wrong. The Postmaster General is charged with the duty of examining these publications and of determining to which class of mail matter they properly belong; and we think his decision should not be made the subject of judicial investigation in every case where one of the parties thereto is dissatisfied. The consequence of a different rule would be that the court might be flooded by appeals of this kind to review the decision of the Postmaster General in every individual instance. In the case of *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94, 104, the Post Office authorities were held to have acted beyond their authority in rejecting all correspondence which the plaintiff upon the subject of the treatment of diseases by mental action; but while it was said in that case that the question involved was a legal one, it was intimated that something must be left to the discretion of the Postmaster General.

It has long been the settled practice of this court in land cases to treat the findings of the Land Department upon questions of fact as conclusive, although such proceedings involve, to a certain extent, the exercise of judicial power. As was said in *Burfenning* v. *Chicago, St. Paul &c. R. R.*, 163 U. S. 321, 323: "Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department, one way or the other, in reference to these questions is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be reëxamined." (Citing cases.) See also *Johnson* v. *Drew*, 171 U. S. 93; *Gardner* v. *Bonestell*, 180 U. S. 362.

But there is another class of cases in which the rule is somewhat differently, and perhaps more broadly, stated, and that is, that where Congress has committed to the head of a department certain duties requiring the exercise of judgment

and discretion, his action thereon, whether it involve questions of law or fact, will not be reviewed by the courts, unless he has exceeded his authority or this court should be of opinion that his action was clearly wrong. In the early case of *Decatur* v. *Paulding,* 14 Pet. 497, it was said that the official duties of the head of an executive department, whether imposed by act of Congress or resolution, are not mere ministerial duties; and, as was said by this court in the recent case of *Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 324: "Whether he decided right or wrong is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction."

In *Marquez* v. *Frisbie,* 101 U. S. 473, which was a bill in equity to review the decision of the Land Department in a preëmption case, Mr. Justice Miller remarked (p. 476): "This means, and it is a sound principle, that where there is a mixed question of law and fact, and the court cannot so separate it as to show clearly where the mistake of law is, the decision of the tribunal to which the law had confided the matter is conclusive." In *Gaines* v. *Thompson,* 7 Wall. 347, it was held that the court would no more interfere by injunction than by mandamus to control the action of the head of a department; and in *United States ex rel. Dunlap* v. *Black,* 128 U. S. 40, it was said that the courts will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, no appellate power being given them for that purpose. See also *Redfield* v. *Windom,* 137 U. S. 636.

The rule upon this subject may be summarized as follows: That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and

the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing.

Upon this principle, and because we thought the question involved one of law rather than of fact, and one of great general importance, we have reviewed the action of the Postmaster General in holding serial novels to be books rather than periodicals; but it is not intended to intimate that in every case hereafter arising the question whether a certain publication shall be considered a book or a periodical shall be reviewed by this court. In such case the decision of the Post Office Department, rendered in the exercise of a reasonable discretion, will be treated as conclusive.

In the case of Masters in Music the question really is whether a pamphlet, complete in itself, treating of the works of a single master, with a greater part of the pamphlet devoted to specimens of his genius, shall be controlled by the cover, which declared that these numbers will be issued monthly, at a certain subscription price per year. Although a comparison of the exhibit with the statute may raise only a question of law, the action of the Postmaster General may have been, to a certain extent, guided by extraneous information obtained by him, so that the question involved would not be found merely a question of law, but a mixed question of law and fact. While, as already observed, the question is one of doubt, we think the decision of the Postmaster General, who is vested by Congress with the power to exercise his judgment and discretion in the matter, should be accepted as final. The decree of the Court of Appeals is therefore

*Affirmed.*


Mr. Justice Harlan (with whom concurred The Chief Justice) dissenting.


The Chief Justice and myself are of opinion that the publication here in question is second class mailable matter, and can-

not concur in the opinion and judgment of the court. Our reasons for dissenting are stated in the opinion filed by us in *Houghton* v. *Payne*, just decided.

But there are some things in the opinion of the court in this case to which we shall advert. It is said that the case is one of doubt. Now, it was admitted at the bar by the Government that the publication known as "Masters in Music" would be carried in the mails as second class matter if the question be decided in accordance with the construction placed upon the statute by the Department for more than sixteen years continuously prior to the present ruling of the Department. We had supposed it to be firmly settled that the established practice of an Executive Department charged with the execution of a statute will be respected and followed—especially if it has been long continued—unless such practice rests upon a construction of the statute which is clearly and obviously wrong. In *United States* v. *Philbrick*, 120 U. S. 52, 59, which involved the construction placed by an Executive Department upon an act of Congress, this court said: "Since it is not clear that that construction was erroneous, it ought not now to be overturned." So in *United States* v. *Healey*, 160 U. S. 136, 145, the court said that it would accept the uniform interpretation by the Interior Department of an act relating to the public lands, "as the true one, if, upon examining the statute, we found its meaning to be at all doubtful or obscure." The authorities to that effect are numerous. *Edwards' Lessee* v. *Darby*, 12 Wheat. 206; *Hahn* v. *United States*, 107 U. S. 402; *United States* v. *Graham*, 110 U. S. 219; *Brown* v. *United States*, 113 U. S. 568; *United States* v. *Philbrick*, 120 U. S. 52; *United States* v. *Johnson*, 124 U. S. 236; *United States* v. *Hill*, 120 U. S. 169; *United States* v. *Finnell*, 185 U. S. 236; *United States* v. *Ala. G. S. R. R. Co.*, 142 U. S. 615; *Hewitt* v. *Schultz*, 180 U. S. 139, 157. Some of them are cited in the opinion of the court in *Houghton* v. *Payne*. The rule of construction which this court has recognized for more than three-quarters of a century is now overthrown. For, it is adjudged that the prac-

tice of the Post Office Department, covering a period of sixteen years and more, need not be regarded in this case, although the construction of the statute in question is admitted to be doubtful. We cannot give our assent to this view.