# COLUMBIAN CORRESPONDENCE COLLEGE *v.* WYNNE.

UNITED STATES MAILS; SECOND CLASS MAIL MATTER; INSTITUTIONS OF LEARNING.

1. An incorporated educational institution conducting a correspondence college for the gain and profit of its stockholders is not a regularly incorporated institution of learning within the meaning of the act of Congress of July 16, 1894, which. admits all periodical publications of institutions of learning to the mails as second-class mail matter. (Following *United States ex rel. Chicago Business College* v. *Payne,* 20 App. D. C. 606.)

2. Where, in a mandamus proceeding to compel the Postmaster General to admit a publication to the mails as second-class mail matter, this court has placed an interpretation upon the statute relating to such mail matter, such interpretation will be followed in a subsequent case, if deemed correct, although the form of remedy pursued in the second case is different, namely, by injunction to prevent the Postmaster General from revoking a certificate of entry ·of a publication to the mails as second-class matter; the form of the remedy not affecting the question at issue.

3. The Postmaster General is not bound by the construction placed by a predecessor in office upon the statute relating to second-class mail matter, so as to preclude him from revoking a certificate of entry of a publication as second-class matter, which had been issued by such predecessor, where no vested right has been created by such certificate.. (Following *Payne* v. *Houghton,* 22 App. D. C. 234.)

No. 1459. Submitted February 15, 1905. Decided March 7, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia sustaining a demurrer to and dismissing a bill in equity to enjoin the revocation by the Postmaster General and Third Assistant Postmaster General of a certificate admitting a publication of the complainant to the mails as second-class matter.          *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree in equity of the supreme court of the District of Columbia dismissing the bill of complaint filed by the appellant seeking to enjoin the appellees, the Postmaster General and the Third Assistant Postmaster General, the defendants below, from revoking or canceling an existing certificate of entry entitling the appellant to mail at the pound rate as second-class matter its publication, "The Student at Home."    The case was heard on bill and answer.

The appellant, the Columbian Correspondence College, is an educational organization incorporated under the general incorporation act of the State of West Virginia, and has its principal office or place of business in the city of Washington.    It is a joint-stock company having a capital of $60,000, divided into shares of $10 each, and with the privilege of increasing its capital stock to the sum of $100,000.    Its method of instruction is what has become known as the correspondence method, which its name sufficiently defines.    It has several thousand students enrolled as members of its various classes in law, normal, civil service, bookkeeping and stenography, and literature and journalism.    The publication is sent to such persons as have made written application to the corporation for its catalogues and for information regarding the scope and work of the corporation, and to such persons as, having made such formal application, have not, on receipt of the first number of the paper mailed to them, enrolled themselves as students.    The publication was originally admitted to the mails at the rate fixed by law for second-class matter July 31, 1899, and on the occasion of its change from a semi-monthly to a monthly publication it was

again submitted for admission as second-class matter July 18, 1900, and duly admitted.   The bill alleges, and the answer does not deny, that it is the intention of the Postmaster General to revoke or cancel the certificate of entry upon the ground that the appellant is not a "regularly incorporated institution of learning" within the meaning of the act of July 16, 1894.

*Mr. Charles A. Ray* and *Mr. A. A. Birney* for the appellant.

*Mr. Henry H. Glassie,* Special Assistant to the Attorney General, for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

Two questions are presented by the assignment of errors, which allege in substance that the court below erred in holding that the appellant is not a regularly incorporated institution of learning within the meaning of the act of July 16, 1894, and that it is not entitled to transmit through the mails its publication at the second-class rate of postage.

1. Appellant's counsel states the first question to be:

"Is an incorporated joint-stock company conducting a correspondence college for the gain and profit of its shareholders, a 'regularly incorporated institution of learning' within the meaning of the act of July 16, 1894?"

The act of July 16, 1894, referred to, is:

"That from and after the passage of this act all periodical publications issued from a known place of publication at stated intervals, and as frequently as four times a year, by or under the auspices of a benevolent or fraternal society or order organized under the lodge system and having a bona fide membership of not less than one thousand persons, or by a regularly incorporated institution of learning, or by or under the auspices of a trades union, and all publications of strictly professional, literary, historical, or scientific societies, including the bulletins issued by State boards of health, shall be admitted to the mails as

second-class matter, and the postage thereon shall be the same
as on other second-class matter, and no more; *Provided, further,*
That such matter shall be originated and published to further
the objects and purposes of such society, order, trades union, or
institution of learning, and shall be formed of printed paper
sheets without board, cloth, leather, or other substantial binding,
such as distinguished printed books [28 Stat. at L. 105, chap.
137, U. S. Comp. Stat. 1901, p. 2653] for preservation from
periodical publications."

This court, in *United States ex rel. Chicago Busi-
ness College* v. *Payne,* 20 App. D. C. 606, had oc-
casion to pass upon the same question as the one here
raised, and its conclusion was that a corporation similar to the
appellant was not an institution of learning within the mean-
ing of the act of Congress referred to. The reasons upon which
its conclusion was based are fully set forth in the opinion of the
court in that case, and it would be a work of supererogation to
restate them. We are asked, however, to review that decision in
the light of the additional facts presented. We fail to find any-
thing in the record which is sufficient to differentiate the cases so
as to lead to a contrary decision in the one at bar. It is true
the proceedings are different in form, the former one asking for
a writ of mandamus to compel the Postmaster General to admit
a publication to the mails as second-class matter, while in the
present case an injunction is sought to prevent that officer from
canceling or revoking a certificate of entry of a publication to
the mails as second-class matter. In our opinion the form of
remedy does not affect the question at issue, and, if this court
was correct in its interpretation of the statute, its decision
should stand, whether relief by injunction or by mandamus be
sought. It is further argued that this court, in the prior case,
should have passed upon the question of its jurisdiction to re-
view the departmental action, and that until that question was
decided it could not lawfully determine questions arising on the
merits. We do not consider that there is anything in this con-
tention which robs the decision in that case of its weight as an
authority. Under the circumstances of that case this court was

clearly justified in considering the merits.    In *Bates & G. Co.*
v. *Payne,* 194 U. S. 106, 48 L. ed. 894, 24 Sup. Ct. Rep. 595,.
involving an analogous question, it was aptly said:

"Upon this principle, and because we thought the question in-
volved one of law rather than of fact, and one of great general
importance, we have reviewed the action of the Postmaster Gen-
eral in holding serial novels to be books rather than periodicals;
but it is not intended to intimate that in every case hereafter
arising the question whether a certain publication shall be con-
sidered a book or a periodical shall be reviewed by this court.
In such case the decision of the Postoffice Department, rendered
in the exercise of a reasonable discretion, will be treated as con-
clusive."

The court below correctly ruled that the appellant was not a.
regularly incorporated institution of learning within the mean-
ing of the act of July 16, 1894, and the question raised must be
answered in the negative.

2. The second proposition is thus stated:

"Does the construction placed upon the statute in 1894 by the
then Postmaster General, after correspondence with the House
of Representatives and an official declaration by that body,
through its presiding officer, at the time of the passage of the
bill, that the act would confer upon publishers in the position
of complainant the privilege claimed, bind the present Postmas-
ter General, and require that he shall await legislative change
before giving a different construction to the act?"

This question must also be answered in the negative, under
the authority of *Houghton* v. *Payne,* 194 U. S. 88, 48 L. ed.
888, 24 Sup. Ct. Rep. 590, 22 App. D. C. 234.    The court there
laid down a rule which we must follow in this case.    It said:

"Great stress is laid by counsel upon the original interpreta-
tion of the term 'periodical,' as applied to these books, which, it
is said, was continued without change under different adminis-
trations and by several successive Postmasters General, and
from 1879, the date of the passage of the act, until 1902, when
the certificates granted by the former Postmasters General were
revoked by the defendant, and a different classification made of

the publications now in issue; that the attention of Congress was repeatedly called to the evils and to the large expense incurred by the government by the admission of publications of this description to mail matter of the second class; that Congress seriously considered these representations, and committees made voluminous report thereon, yet Congress persistently refused to change by legislation the ruling of the Postmasters General in that regard.

"The action of the government consists merely in the revocation of a certificate or license admitting these publications as mail matter of the second class. No vested right having been created by such certificate, no contract can be said to be impaired by its revocation.

"Contemporaneous construction is a rule of interpretation, but is not an absolute one. It does not preclude an inquiry by the courts as to the original correctness of such construction. A custom of the department, however long continued by successive officers, must yield to the positive language of the statute.

"While it might well happen that by reason of the relative unimportance of the question when originally raised a too liberal construction might have been given to the word 'periodical,' we cannot think that if this question had been raised for the first time after second-class mail matter had obtained its present proportions, a like construction would have been given. Some consideration, in connection with the revocation of these certificates, may properly be accorded to the great expense occasioned by this interpretation, and the discrimination in favor of certain publishers and against others, to which allusion has already been made. We regard publications of the Riverside Literature Series as too clearly within the denomination of books to justify us in approving a classification of them as periodicals, notwithstanding the length of time such classification obtained."

Furthermore, it will be remembered that this case was heard and determined on the bill and answer, and in the latter the defendants make this averment:

"That it was never expressly held or determined by any of

their predecessors that any incorporated joint-stock company engaged in the business of education, for the personal or pecuniary profit of the owners or stockholders thereof, was a 'regularly incorporated institution of learning' within the meaning of the act of July 16, 1894."

We find that there was no error in the court below. It follows that the decree appealed from must be affirmed with costs, and it is so ordered.                              *Affirmed.*

An appeal to the Supreme Court of the United States by the appellant was allowed April 6, 1905.