SIERRA CLUB, a California non-profit
corporation, Plaintiff,

v.

UNITED STATES POSTAL SERVICE
et al., Defendants.

No. C–71–1840 SW.

United States District Court,
N. D. California.

Nov. 1, 1973.

Athearn, Chandler & Hoffman, Clark
W. Maser, San Francisco, Cal., for
plaintiff-appellant.

James L. Browning, Jr., U. S. Atty.
by Richard F. Locke, Asst. U. S. Atty.,
San Francisco, Cal., for defendants-
appellees.

MEMORANDUM OF DECISION

SPENCER WILLIAMS, District
Judge.

I.

On November 9, 1970, the Sierra Club
("the Club") was notified by the San
Francisco Postmaster that his office

was considering revocation of the special third class postage rate. The preliminary reason given for the action at this time was a change in the Club's income tax exemption under Section 501(c)(4) (of the Internal Revenue Code). The Club filed a timely appeal for reconsideration with the Postal Service ("the Service"). The appeal was denied by the Director, Office of Mail Classification ("OMC"), United States Post Office in February, 1971. In July, 1971 the Club was notified that its special second class postage rate had also been revoked by the OMC. On October 8, 1971 a suit for judicial review was commenced to compel the Service to reinstate the special second and third class mailing rates and to refund all excess postage fees. Subsequent to the filing of the original complaint, the defendants agreed to and did temporarily rescind the revocation and refund the excess postage paid, and the plaintiff agreed to stay further action on the law suit pending appeal to the OMC. It was agreed by the parties that the special non-profit rates could not be withdrawn solely by reason of the change in the Club's income tax exempt status, but rather the only issue on appeal to the OMC would be whether the Sierra Club is an "educational organization" within the meaning of 39 C.F.R. Sections 132.1 and 134.

Representatives of the Club met with the OMC on November 11, 1971 and were given an opportunity to present all relevant material to substantiate their claim. Additional data was later submitted by the Club as part of their case. Their efforts, however, failed to bring about any change and on March 14, 1972, the Service sustained the revocations, having found that the Club is not an "educational organization" within the meaning of 39 C.F.R. Sections 132.1 and 134.

On July 13, 1972 the Club filed an amended complaint reflecting the above developments. Defendants answered and moved for summary judgment. Hearing on the motion was held February 27, 1973. The principal argument of the Club was that the OMC had failed to consider all the documents and samples of literature the Club submitted during its review. Defendants requested and were granted leave to submit a supplemental affidavit to illustrate that the list the Director of the OMC had given as items relied upon by him in making his decision was not exclusive and that indeed all of the submitted material had been considered.

## II.

Defendants urge this Court to sustain the Postal Service's determination on the grounds that the Service is given broad discretion in matters of mail classification and that it acted within that discretion in making its determination. Plaintiff asserts that defendants committed an abuse of discretion in finding, first, that the Club is primarily a "conservation" group, and secondly, even assuming the propriety of that finding, that "conservation" and "education" are mutually exclusive functions. The Club further argues that summary judgment is improper at this stage because material facts are still in controversy and that a trial *de novo* is required to develop a complete picture of the educational essence of the Club.

The court finds there are no facts in controversy and that the standards for judicial review of administrative agencies have been met. Thus, the motion for summary judgment is granted.

## III.

Judicial review is granted to the courts by 5 U.S.C. § 701 et seq. This review is not omnipotent, but rather is restricted by principles of case and statutory law. Courts are loathe to substitute their judgment for that of an agency, but public policy dictates interference by the courts in some situations. The Administrative Procedure Act states that administrative action is reviewable "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is by law committed to agency discretion." 5 U.S.C. 701

(1964). This chapter has been broadly construed by the courts so as to permit judicial review of agency action wherever possible. Judicial review is limited only upon a showing of clear and convincing evidence of a contrary legislative intent. Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809. A reading of 39 U.S.C. § 4554 suggests no such congressional intent to preclude judicial review, and it is therefore permitted under these facts.

■ Having accepted jurisdiction, it now falls upon the court to ascertain the scope of judicial review to be applied in this situation. In matters dealing with the qualification of mailers for certain mailing status, the Third Circuit has adopted a very narrow scope of review. American Bible Society v. Blount, 446 F.2d 588 (3rd Cir. 1971); Doelka Greeting Cards, Inc. v. Summerfield, 97 U.S.App.D.C. 29, 227 F.2d 44 (1955). Basically, the determination of mailing status by the Postmaster is an exercise of discretion and will not be interfered with by the courts unless clearly wrong. Bates and Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894; Esquire, Inc. v. Walker, 55 F.Supp. 1015 (D.D.C.1944), reversed on other grounds 80 U.S.App.D.C. 145, 151 F.2d 49, affirmed Hannegan v. Esquire, Inc., 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586; Dell Publishing Co. v. Summerfield, 198 F.Supp. 843 (D.D.C. 1961), affirmed sub nom. Dell Publishing Co. v. Day, 113 U.S.App.D.C. 1, 303 F.2d 766 (1965). Nevertheless, in *American Bible Society, supra*, 446 F.2d at page 597, Judge Van Dusen said that "within that narrow zone of reviewability over the Postmaster General's actions which this court does possess, a federal court can reverse actions which are so arbitrary and capricious as to amount to an abuse of discretion, or which are contrary to the Constitution."

■ These judicial guidelines must be reconciled with the requirements of the Administrative Procedure Act, 5 U.S.C. § 701, *supra*. Plaintiff errone-ously contends that under the provisions of 5 U.S.C. § 706, a trial *de novo* is mandated. Plaintiff places substantial reliance on Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In that case, the Court did sanction a *de novo* hearing under Section 5 U.S.C. § 706(2)(F), but set forth the only two circumstances in which it was appropriate: (1) where the action is adjudicatory in nature and the agency fact-finding procedures are inadequate, and (2) when issues that were not raised before the agency are raised for the first time in a proceeding to enforce non-adjudicatory agency action. Neither of the guidelines in (1) is applicable here: the plaintiff was granted ample opportunity to present whatever information it felt necessary to substantiate its claim, and there is no evidence that the Service's fact-finding procedures are inadequate or that the issues raised were not considered by the Service; (2) is likewise inapplicable to the instant case in that the proceeding before the OMC was adjudicatory and all the issues before this Court were presented to it. It is thus apparent from the Administrative Procedure Act that the Court's scope of review in the present case is limited to a determination of whether the Service's decision constituted an "abuse of discretion, was contrary to a right or privilege, was without authority or was formulated without observance of procedures required by law." 5 U.S.C. § 706 (2)(A)–(D).

### IV.

■ In determining whether or not the decision was arbitrary, the Court has considered the administrative record, as well as a review of the parties' affidavits, correspondence and pleadings. Although two reasons were given for the Service's revocation of the privileged rates which the Club had enjoyed since 1952, the revocation was finally sustained on the basis of only one. The first was indicated by the San Francisco Postmaster in his letter of November

9, 1970 when he referred to a recent decision by the IRS to revoke certain tax privileges as the "foundation of our action." This basis was later held to be invalid by both parties for the purposes of revoking mailing privileges. It is well established that rulings by administrative agencies do not have the effect of *stare decisis* on one another. Thus the Service was not bound by the rulings or determinations of the Internal Revenue Service as to what constitutes an "education organization." Rather, the Service must conduct its own reviews and make its own determination concerning an organization's eligibility to mail at the special second or third class rates.

■ The second reason given was, in fact, the underlying basis for sustaining the revocation, and that was whether the Sierra Club is an educational organization within the meaning of 39 C.F.R. Sections 132.1 and 134. Basing his decision upon independent research by himself and members of his staff, *review of numerous documents* submitted by the Club which detail its purposes and activities, and a meeting with representatives and counsel for the Club, the OMC concluded that the Club is "first, foremost, and primarily a conservation organization." (Letter of Decision, March 14, 1972.) The decision further states:

> "We do not doubt that the Sierra Club possesses some educational, philanthropic, and even fraternal aspects; however, these characteristics are all secondary to the main purpose of the organization which is conservation. Congress specifically enumerated the types of organizations which are entitled to the special non-profit rates and it did not include conservation organizations. Accordingly, I must conclude that the Sierra Club is not an 'educational organization' within the meaning of the applicable statutes, and therefore, does not qualify to mail at the special second and bulk-class rates."

This conclusion is given added significance by recent litigation instituted by plaintiff, wherein it described itself as a non-profit organization with a special interest in conservation. Sierra Club v. Hickel, 433 F.2d 24, (9th Cir. 1970) affirmed sub nom., Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed. 2d 636 (1972); Sierra Club v. Hardin, 325 F.Supp. 99 (D.Alaska 1971).

In conclusion, the Court finds there was no deprivation of rights. Having brought suit to compel the Postal Service to reinstate the special mailing rates for second and third class mail and to have the excess postage refunded, the plaintiff failed to establish the burden of proving that the Postal Service acted arbitrarily, capriciously or committed an abuse of discretion in finding that the Sierra Club is not an educational organization within the meaning of 39 C.F.R. §§ 132.1 and 134 and thereby revoking their special mailing rates.

It is hereby ordered that the defendant's motion for summary judgment should be and hereby is granted.