SIERRA CLUB, a California Non-Profit Corporation, Appellant,

v.

UNITED STATES POSTAL SERVICE et al., Appellees.

No. 74–1830.

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1976.

Rehearing and Rehearing En Banc Denied March 21, 1977.

Clark W. Maser (argued), of Athearn, Chandler & Hoffman, San Francisco, Cal., for appellant.

George Christopher Stoll, Asst. U. S. Atty. (argued), San Francisco, Cal., for appellees.

Before DUNIWAY and WRIGHT, Circuit Judges, and LUCAS,* District Judge.

LUCAS, District Judge:

The Sierra Club, plaintiff in the district court, brings this appeal from an order of the district court granting defendants' motion for summary judgment.[1] For the reasons stated in this opinion, we affirm the judgment below.

Prior to 1971, the Sierra Club enjoyed preferred second and third class mailing rates pursuant to 39 U.S.C. §§ 4358 and 4452, because it was considered an "educational" organization. In 1971, however, the Postal Service decided to discontinue the Sierra Club's preferential rates. The Postal Service based this action upon an earlier determination of the Internal Revenue Service that the Sierra Club no longer qualified for a tax exemption under the Internal Revenue Code of 1954 [26 U.S.C.] § 501(c)(3), which applies to charitable and educational institutions.[2] The action was apparently founded on the assumption that

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. See *Sierra Club v. United States Postal Service*, 386 F.Supp. 1102 (N.D.Cal.1973).

2. The I.R.S. determined that the Sierra Club was no longer entitled to a tax exemption under 26 U.S.C. § 501(c)(3), but that it should receive an exemption under 26 U.S.C. § 501(c)(4) instead. Section 501(c)(4) confers tax exempt status on nonprofit organizations "operated exclusively for the promotion of social welfare."

the I.R.S., in revoking the Section 501(c)(3) exemption, found that the Sierra Club was no longer an "educational" organization.

Soon after the decision by the Postal Service not to continue the Sierra Club's preferential treatment, the Sierra Club filed suit in the district court seeking review of the administrative action, injunctive relief, and a refund under the Tucker Act (28 U.S.C. § 1346(a)(2)). This action prompted the Postal Service to reconsider its decision; the Postal Service immediately restored the Sierra Club's preferred status and asked the Sierra Club to present documentary evidence substantiating its claim that it was entitled to preferential treatment as an educational organization. In return, the Sierra Club ceased the prosecution of its action. The Sierra Club thereafter submitted to the Postal Service a substantial volume of documentation and materials in support of its position.

On November 11, 1971, a meeting was held in the office of the Manager of the Mail Classification Division of the Postal Service. In attendance at that meeting were the Manager of the Mail Classification Division, the Executive Director of the Sierra Club, and attorneys for both sides. In the course of the meeting, the Sierra Club was allowed an opportunity to present further data which it wished the Postal Service to consider and to make oral arguments in support of its position.

Subsequent to the meeting, the Sierra Club submitted additional information at the request of the Postal Service. This additional material included the Sierra Club's financial statement, documentation of the Sierra Club's various activities, and a listing of Sierra Club publications.

On the basis of all of the material presented before, during, and after the meeting, the Postal Service reached a decision regarding the Sierra Club's preferred mailing rates, and notified the Sierra Club of that decision by a letter dated March 14, 1972. It decided that the Sierra Club was not an educational organization within the meaning of 39 C.F.R. §§ 132.1 and 134, and was not, therefore, entitled to the preferen-

tial mailing rates. After the Sierra Club was notified of this decision, it filed an amended complaint in the district court. The amended complaint set forth the events which had occurred since the original complaint was filed. On August 11, 1972, the Postal Service filed an answer to the amended complaint, and on January 26, 1973, it filed a motion for Summary Judgment.

At the hearing of the motion for Summary Judgment, the Sierra Club was given yet another opportunity to present any material to the Postal Service which the Sierra Club felt was not adequately considered when the Postal Service made its decision. The Sierra Club rejected this opportunity to augment the record and resubmit the matter to the Postal Service, however. The motion of the Postal Service for Summary Judgment was granted in a Memorandum of Decision filed on November 1, 1973, and this appeal ensued.

■■■ The Sierra Club first contends that the Postal Service was wrong in concluding that the Sierra Club is not an educational organization and is thus not entitled to preferential postal rates. There is a strong presumption in favor of a Postal Service determination of this sort and the scope of review is extremely limited. *See, e. g., American Bible Society v. Blount,* 446 F.2d 588 (3d Cir. 1971). Traditionally, the courts have overturned a Postal Service determination of mailing rate status only when the determination is "clearly wrong," amounting to an abuse of discretion. *See Bates & Guild Co. v. Payne,* 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894 (1904). This is still the proper standard of review; a district court should reverse a Postal Service rate determination only if it is arbitrary and capricious. The district court carefully considered the Postal Service's decision, and found that the Postal Service did not act arbitrarily or capriciously in this case, and did not, therefore, commit an abuse of discretion. 386 F.Supp. at 1105. Upon a review of the record, we agree with the district court that no such abuse has been shown. Sierra Club's contention that the

Postal Service rate determination was erroneous must therefore fail.

Sierra Club's next contention on this appeal is that it was denied procedural due process because it did not receive a revocation hearing as it contends is required by *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Goldberg* held that a recipient of public assistance benefits had been denied due process where those benefits were terminated without effective notice of the reasons for the proposed termination, without an opportunity for the recipient to confront adverse witnesses, and without an opportunity for the recipient to present his own arguments and evidence. While that case involved the termination of welfare benefits, *Goldberg* has been applied in various other contexts. *See, e. g., Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (execution of prejudgment writ of execution); *Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973) (denial of motor vehicle license).

*Goldberg* does not, however, establish a rigid standard to be applied in determining whether the principles of procedural due process have been satisfied. In its opinion, the Supreme Court carefully considered the flexible nature of the requirements of due process:

"The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 [71 S.Ct. 624, 647, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in *Cafeteria & Restaurant Workers Union, etc. v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 1749, 6 L.Ed.2d 1230] (1961), 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private

interest that has been affected by governmental action.' See also *Hannah v. Larche*, 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 1513, 1514, 4 L.Ed.2d 1307 (1960). "It is true, of course, that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." 397 U.S. at 262–63, 90 S.Ct. at 1017.

This court has consistently adhered to this view of procedural due process; for example, in *Bignall v. North Idaho College*, 538 F.2d 243, 245 (9th Cir. 1976), we stated: "Due process is a flexible, pragmatic concept."

A court must consider the circumstances surrounding a particular termination of benefits in determining whether the beneficiary has been denied due process. Some situations will require a full evidentiary hearing and others will require less, depending upon the interest of the individual and the function of the government, and upon the opportunity of the individual to have his position heard.

In this case, the interest of the beneficiary, while important, is not as compelling as, for example, the interests of the beneficiaries in *Goldberg* (welfare benefits) or *Bignall* (employment rights). The ability of a public interest organization to communicate with its members is undoubtedly important to its existence, and the mail may well be an especially efficient method of communication for most of the organization's purposes. The Postal Service has not, however, terminated the Sierra Club's right to use the mails for its communications. It has merely required that the Sierra Club pay the same rates as others who use the mails. The Sierra Club's interest in its preferred rates is simply not protected to the same extent that life-sustaining welfare or unemployment benefits are protected.

The Postal Service's interests, on the other hand, are more compelling in this case than in most. There are various categories of preferred mailing rates. Rate classification decisions are initially made, in most cases, by the mailing requirements section

of each local post office; these may be appealed to the Office of Mail Classification. Hundreds of thousands of these decisions are made each year. If a hearing were required before each of these decisions was made, severe disruption of mail service might occur because personnel and resources would have to be reallocated on a massive scale to handle the administration of rate classification cases. *Goldberg* requires that these factors be considered in determining whether due process has been satisfied. 397 U.S. at 263, 90 S.Ct. 1011.

■ The facts of this case show that the Sierra Club was given every opportunity to present evidence in its attempt to sustain its burden of showing that it was entitled to preferred mailing rates. It was allowed to appear before the Postal Service with its counsel, and present arguments supporting its position. The Sierra Club was thereafter invited to submit further documentation of its position. The Postal Service made its decision based solely upon the material presented by the Sierra Club and published judicial opinions, thus eliminating any need to consider whether the Sierra Club would have been entitled to confront adverse witnesses. The decision was made after careful deliberation rather than in a precipitous and summary fashion.[3] This is clearly more than postal regulations mandate.[4] Furthermore, to require more would seriously affect the administration of the Postal Service. Due process clearly requires no more under the circumstances.

■ Finally, the Sierra Club contends that it was entitled to a *de novo* review of the Postal Service determination in the district court under the Administrative Procedure Act, 5 U.S.C. § 706, because of the inadequate fact-finding procedures utilized by the Postal Service. Here again, we agree with the district court that the fact-finding procedures were sufficient in this case, and afforded substantial due process.

We therefore affirm the district court's granting of summary judgment in favor of the Postal Service in this matter.

EUGENE A. WRIGHT, Circuit Judge, specially concurring:

In a recent decision, *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court relied on many of the same factors we mention today to determine that the due process clause does not require that, prior to the termination of social security disability benefit payments, the recipient be afforded an opportunity for an evidentiary hearing. The Court noted that the following factors are to be considered in assessing the validity of any administrative decisionmaking process:

　1. The degree of potential deprivation that may be created by the decision. *Id.* at 341, 96 S.Ct. 893.[1]

---

**3.** The Postal Service gathered information and deliberated for approximately 5½ months between the time of the rescission of the initial revocation, and the time of the second revocation.

**4.** Postal regulations set forth the procedure to be followed where a revocation is contemplated:

"*Revocation.* The approval may be revoked if the authorization was given to an organization or association which was not qualified or which becomes unqualified. The postmaster who approved the application will notify the organization of the pending cancellation of the authorization and of the reasons of the cancellation. The organization will be allowed 10 days within which to file a written statement appealing the pending cancellation. If no appeal is filed, the postmaster will cancel the authorization. If an appeal is filed, decision on the continuance of the authorization will be made by the Finance and Administration Department, Office of Mail Classification. Notice of the decision will be given the organization through the postmaster." 39 C.F.R. 134.5(f).

The Sierra Club was clearly given a greater opportunity to present its position than this regulation requires.

It is also noteworthy that the Internal Revenue Service has no procedure for an administrative appeal comparable to the one provided by the Postal Service in this area. *See Bob Jones University v. Simon*, 416 U.S. 725, 746–49, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).

**1.** The Court appeared to concentrate on financial need and the recipient's ability to continue in gainful activity or otherwise be provided with sufficient resources. It also noted that length of wrongful deprivation could be a fac-

2. The fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards. *Id.* at 343, 96 S.Ct. 893.[2]

3. The public interest involved, including the administrative burden and other societal costs. *Id.* at 347, 96 S.Ct. 893.[3]

The Court also noted that written submissions could be adequate in the pretermination phase under certain conditions.[4]

The Court mentioned another factor which is often overlooked:

> In assessing what process is due in this case, substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare system that the procedures they have provided assure fair consideration of the entitlement claims of individuals.

*Id.* at 349, 96 S.Ct. at 909.

Although I express no opinion on the adequacy of the postal regulations themselves, I feel that in the factual context of this case, consideration of the factors enumerated by the Court in *Eldridge*, combined with an examination of the opportunities that Sierra Club had to present evidence prior to the termination of its preferred status, indicate that it was afforded due process of law.

Even though Eldridge was entitled to judicial review before the administrative determination of his claim became final, *id.* at 349, 96 S.Ct. 893, this distinction is not controlling where Sierra Club had adequate opportunity to present its case between the tentative and final determinations and where the final action of the Postal Service is subject to judicial review. *Cf. American Bible Society v. Blount,* 446 F.2d 588, 596–97 (3rd Cir. 1971).

---

tor. The delay in Eldridge's case was approximately 10 to 11 months.

2. The Court noted that central to the evaluation of the administrative process was the nature of the relevant inquiry, *citing Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 617, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). For a good discussion of the balancing process undertaken by the Court in its creditor cases *see* Comment, "Justice White's Chemistry: The Mitchellization of *Fuentes,*" 50 Wash.L.Rev. 901 (1975). Analogies can be drawn from these cases to determine what interests should be taken into account.

3. Part of the most visible burden, according to the Court, would be the incremental cost resulting from the increased number of hearings. The Government's interest in conserving scarce fiscal and administrative resources was a factor to be weighed.

4. Specifically, the Court thought that the conclusions of physicians, supported by X-rays and lab reports, was information typically more amenable to written than to oral presentation. It compared these professional sources to welfare recipients and lay witnesses supporting their cases. Arguably, the individuals providing information for the Sierra Club were more akin to the former than the latter.