**NATIONAL RETIRED TEACHERS ASSOCIATION et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE et al., Defendants.**

Civ. A. No. 76–157.

United States District Court, District of Columbia.

April 7, 1977.

Jack L. Lahr, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs.

Stephen S. Cowen, Washington, D.C., for defendants.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

Two nonprofit organizations enjoying preferred third-class mailing rates seek an order declaring invalid an August, 1975 United States Postal Service (USPS) regulation which was invoked to prohibit them from mailing material pertaining to a separate, but affiliated, nonprofit organization not qualifying for the lower rates. They also seek a refund of the amounts expended to post the material at the applicable regular rate.

In 1970, Congress by passing the Postal Reorganization Act [1] revamped the entire U.S. postal system. The Act established two independent agencies, United States Postal Service and the Postal Rate Commission (PRC). While USPS was charged with managing the daily operations of the postal system, the PRC was given broad authority over changes in mail rates and classifications.[2]

Long prior to the Act, Congress had established a statutory program entitling "qualified nonprofit organizations" [3] to mail at preferred rates. Chief among the purposes of the program was to "promote charitable causes".[4] Although the 1970 legislation repealed the statutory basis for the program, agency regulations [5] implementing the program were continued in force pending revision or repeal by USPS or a court of competent jurisdiction.[6] These regulations were recently ratified by the PRC.[7]

Plaintiff National Retired Teachers Association (NRTA) is a nonprofit membership association, composed of retired school teachers, incorporated for the purposes, *inter alia*, of "foster[ing] and promot[ing] the social welfare, educational, scientific and philanthropic objectives and needs of retired teachers, administrators, and all other persons who either are members of the Association or are eligible for membership. . . ." [8] During the period pertinent to this lawsuit, NRTA has been exempt from taxation under § 501(c)(4) of the Internal Revenue Code [9] and has also been authorized, under applicable regulations,[10] to post mail at special third-class nonprofit rates.

Plaintiff American Association of Retired Persons (AARP) is a nonprofit membership

1. Pub.L. 91–375, 84 Stat. 719, 39 U.S.C. § 101 *et seq.*

2. For a brief discussion of the statutory scheme in this regard, *see National Association of Greeting Card Publishers v. USPS,* No. 75–1856, Slip Opinion at 8–10 (D.C.Cir. December 28, 1976).

3. Defined in 39 U.S.C. § 4452(d) (1964) (repealed): "The term 'qualified nonprofit organization' as used in this section means religious, educational, scientific, philanthropic, agricultural, labor, veterans, or fraternal organizations or associations not organized for profit and none of the net income of which inures to the benefit of any private stockholder or individual."

4. H.R.Report No. 1084, 93d Cong., 2d Sess. 3 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News pp. 3406, 3408.

5. Postal Service Manual § 134.5, 39 C.F.R. § 134.5.

6. Act Aug. 12, 1970, § 3, § 5 (1970), 84 Stat. 773–774.

7. *See* OPINION AND RECOMMENDED DECISION, MC–73–1 PHASE 1 (Postal Rate Commission, April 15, 1976).

8. NRTA Bylaws Art. II.

9. § 501(c)(4) exempts from taxation "civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes."

10. *See* Postal Service Manual § 134.5, 39 C.F.R. § 134.5.

association of persons aged 55 and over incorporated under the laws of the District of Columbia for the purpose, among others, of "aid[ing] the aged in their needs—social, physical, economic, intellectual—[such purpose being] parallel to [that] of the National Retired Teachers Association and [is] intended to extend similar privileges, benefits and opportunities to all retired persons." [11] Like NRTA, AARP has been classified as a social welfare organization under I.R.C. § 501(c)(4) and has been extended third-class preferred rate mailing privileges.

Having similar aims, the two associations share physical facilities and administrative personnel and jointly select an "Executive Director" as chief administrative officer of both organizations.[12] The bylaws governing the associations provide for consultation between their respective executive committees on matters of "common interest." [13] Furthermore, in order to avoid duplication of administrative expenses, such as postage fees, the two organizations have formed the NRTA–AARP Administrative Fund.

Retired Persons Services, Inc. (RPS) is a nonprofit membership corporation, organized under the laws of the District of Columbia, which operates six "NRTA–AARP Pharmacy Service" outlets, providing mail order services from a pharmacy products catalog for members of NRTA and AARP. Under a license agreement with NRTA and AARP, RPS is required to remit to those two organizations one percent of the gross receipts on all sales from these outlets.[14] RPS is neither tax exempt under I.R.C. § 501 nor qualified to mail at the special third-class nonprofit rates. It draws its trustees exclusively from the leadership of NRTA and AARP and, in the event of dissolution, it assets revert to those two associations. RPS is not a party to this action.

Defendants are USPS and its employee, Darwin Sharp, Director of the Office of Mail Classification, Rates and Classification Department.

During the summer of 1975, NRTA and AARP jointly sought to mail a catalog of pharmaceutical products, available from the RPA service outlets, to their newly-enrolled members. The catalog met the requirements, set forth in Postal Service Manual § 134.2,[15] with respect to printing, size and weight of third-class mailing matter. However, USPS refused to accept the list for mailing at the third-class preferred rates.

Shortly, thereafter, on August 26, 1975, "in order to make it clear that an organization authorized to mail at the special bulk third-class rates for qualified nonprofit organizations may mail only its own matter at these rates and may not delegate or lend the use of its permit to any other person, organization, or association," [16] USPS added § 134.57 to the Postal Service Manual.[17]

---

11. AARP Certificate of Incorporation.

12. See NRTA Bylaws Art. IV, AARP Certificate of Incorporation ART. III.

13. Id.

14. Their "License Agreement" provides that "RPA, for and during the term of this license, shall pay quarterly to [NRTA and AARP] one percent (1%) of the gross receipts on all sales of [RPS]. . . ."

15. 39 C.F.R. § 134.2.

16. 40 Fed.Reg. 37209 (August 26, 1975).

17. Id. The regulation reads:
".57 What may be mailed at the special bulk third-class rates for qualified nonprofit organizations.
An organization authorized to mail at the special bulk third-class rates for qualified nonprofit organizations may mail only its own matter at these rates. An organization may not delegate or lend the use of its permit to mail at special third-class rates to any other person, organization, or association. Cooperative mailings may not be made at the special bulk third-class rates for qualified nonprofit organizations if one or more of the cooperative persons or organizations is not entitled itself to the special rates. Cooperative mailings involving the mailing in behalf of or produced for an organization not authorized to mail at the special bulk third-class rates for qualified nonprofit organizations must be paid at the applicable regular rate. If customers disagree with a postmaster's decision that the regular rate of postage applies to a particular mailing, the procedures in 146.14 may be followed."
Plaintiffs contend that the third sentence of this regulation is invalid.

Essentially, it provides that an organization qualified to mail at the preferred third-class rate "may mail *only its own matter* at these rates." (emphasis added). "Cooperative mailing involving the mailing of matter in behalf of or produced for an organization not authorized to mail at the special bulk third-class rates for qualified nonprofit organizations" [18] were to be paid at the applicable regular rate.

On October 3, 1975, NRTA and AARP requested a ruling from defendant Sharp. By letter dated November 25, 1975, Mr. Sharp denied the request to mail the catalog at the lower rates. On January 26, 1976, plaintiffs instituted this action, which is now before the Court on Cross-Motions for Summary Judgment and plaintiffs' Motion to Strike Attachments.

■ Plaintiffs raise three distinct arguments in support of their Motion for Summary Judgment. They first contend that, in promulgating § 134.57, USPS has encroached on territory which Congress specifically reserved to itself and that the regulation is, therefore, void as in excess of USPS' statutory prerogatives.[19] This proposition, however, is supported by neither the legislative history nor a plain reading of the statute itself.[20]

■ Plaintiffs assert that "the legislative history indicates that Congress intended to retain for itself exclusive authority over the highly political subject of preferred rate authorizations." [21] Indeed, § 1202 of H.R. 17070 (the House bill, which, although substantially amended, later became law) originally provided that "*Congress* by legislation shall determine which classes of postal users, if any, shall be entitled to send mail free of postage or at rates some specified percentage lower than those established by the Postal Service . . . ." [22] (emphasis added). It was felt that the matter of free or reduced rate mailing was a "question of policy" more suited to congressional determination than to the expertise of a rate-making commission.[23] However, § 1202 was not reported out of conference, and no

18. 40 Fed.Reg. 37209 (Aug. 26, 1975).

19. It is well settled that a regulation which exceeds congressional authorization is invalid. *See, e. g., Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936). *See* 5 U.S.C. § 706(2)(C).

20. The standard of review here is not, as suggested by defendants, whether the agency action (issuance of the regulation) was arbitrary and capricious. *Cf. National Rifle Association v. USPS*, 407 F.Supp. 88 (D.D.C.1976) and *Sierra Club v. USPS*, 386 F.Supp. 1102 (N.D.Cal. 1973), *affirmed*, 549 F.2d 1199 (9th Cir. 1976) (arbitrary and capricious standard used by courts in reviewing adjudicatory, not legislative, functions of USPS). The regulation controverted in this action should be set aside only if found to be plainly erroneous or inconsistent with the purpose of the statutes. *See Gulf Oil Corp. v. Hickel*, 140 U.S.App.D.C. 368, 435 F.2d 440 (1970).

21. Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment 8. *Citing* [1970] 2 U.S.Code Cong. & Ad.News 3666, 3718; *Association of American Publishers v. USPS*, 157 U.S.App.D.C. 397, 485 F.2d 768, 776 (1973); [1974] 2 U.S.Code Cong. & Ad.News pp. 3408, 3421 (1974).

22. 116 Cong. Rec. 20222 (June 17, 1970). *See* H.R.Report No. 1104, 91st Cong., 2d Sess. 41 (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News p. 3692.

23. H.R.Report No. 1104, 91st Cong., 2d Sess. 18 (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News pp. 3649, 3666. *See* 116 Cong.Rec. 16192.
 "H.R. 17070 continues the existing categories of free and reduced-rate mail (e.g., mailings of certain nonprofit organizations . . .) and provides that the preferential rates accorded these categories of mail will not be changed except by Congress, unless the Congress fails to appropriate funds sufficient to cover the revenue foregone because of the rate preference. H.R. 17070 reserves to congressional initiative any changes in categories or rates applicable to mail formerly entitled to free or reduced rates. Thus, Congress will not legislate on this subject by a failure to veto any change proposed by the Postal Service in this area, but any change will be made only by affirmative legislation in the conventional sense. In this way, H.R. 17070 reflects the fact that any change in rates or categories for free or reduced-rate mail entails questions of policy that are less appropriate to the expertise of a rate-making commission than to a congressional determination of the public interest."

similar provision was substituted.[24] On the contrary, notwithstanding the observations of the House Committee some four years later,[25] and subject to congressional power to amend or repeal the statute, Congress unmistakably delegated its ratemaking and classification prerogatives to the PRC.[26] Its objective was to remove political influence from the day to day management of the postal system.[27] *See National Association of Greeting Card Publishers*, No. 75–1856, Slip Opinion 8–10 (D.C.Cir. December 28, 1976). By taking the matter out of the hands of Congress and placing it in "impartial professionals", the theory was that members of Congress would not be subjected to "the relentless pressures of lobbyists for the big mail users."[28]

The proposition that Congress did intend to surrender its authority over ratemaking and classifications is reinforced by a careful reading of §§ 3621–3625 of Title 39. Nowhere in that detailed statutory scheme is there explicit, or even implicit, reservation of authority to Congress. Plaintiffs' argument that § 134.57 constitutes an invasion of Congress' sphere of authority is, therefore, without merit.

Plaintiffs' alternative argument is that "even, *arguendo*, if Congress, in the 1970

Act, did delegate its authority over the administration of preferred rate standards, such authorization was delegated to the Rate Commission and not to the Postal Service."[29]

■ Any change in the classification schedule must, by statute, be recommended to USPS by the PRC and would be invalid in the absence of such a recommendation. 39 U.S.C. § 3621 *et seq. See National Association of Greeting Card Publishers v. USPS, supra* at 8–10. No such recommendation having been made here, the determinative inquiry becomes whether the regulation is a "classification". Plaintiffs maintain that it is. They contend that the regulation "creates a new subclass of mail which, although mailed by and for a qualified nonprofit organization and unquestionably appropriate mailing matter, must be mailed at standard (rather than preferred) third-class rates, simply because a related association will be servicing responses generated by mail."[30]

■ Examination of the existing mail classification schedule and its predecessor reveals that a classification is a "grouping"[31] of mailing matter for the purpose of assigning it a specific rate or method of handling. Relevant factors include

---

**24.** *See, e.g.,* H.R.Rep. No. 1363, 91st Cong., 2d Sess. 85, 86 (1970), *reprinted in* [1970] U.S. Code Cong. & Ad.News pp. 3718, 3719. 116 Cong.Rec. 27080.

**25.** "Congress wisely relinquished the responsibility for setting postal rates under the Postal Reorganization Act of 1970. However, Congress in no way gave up its right to set the basic policies which are involved in ratemaking. The right to set governmental policy is, above all, fundamental to the operation of any legislative body. This legislation involves ratemaking policies and is an exercise of Congress' Constitutional power and responsibility." H.R. Report No. 1084, 93d Cong., 2d Sess. 3 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News pp. 3406, 3408.

**26.** "[W]e have completely given up our veto power over postal rates." 116 Cong.Rec. 27600 (remarks of Sen. Scott).

**27.** H.R.Report No. 1104, 91st Cong. 2d Sess. 1 (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News p. 3650.

**28.** 116 Cong.Rec. 27604 (remarks of Mr. Udall). Predictably, the reaction of several members of the House to this surrender of Congressional prerogative was unfavorable. One disgruntled gentleman protested that the denial of an appeal to Congress in rate matters yielded a right "which we have always had since we threw tea into Boston Harbor and fought King George because of the Stamp Act, in the first place." Id. at 27598 (remarks of Mr. Hall). *See also Id.* at 27608 (remarks of Mr. Anderson).

**29.** PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT 16.

**30.** *Id.* at 19.

**31.** *See Director General of Railroads v. Viscose,* 254 U.S. 498, 503, 41 S.Ct. 151, 65 L.Ed. 372 (1921); *see also Jones v. Fire & Casualty Insurance Co.,* 266 F.Supp. 91 (E.D. Conn.1967).

size, weight, content, ease of handling, and identity of both posting party and recipient.

Prior to the enactment of § 134.57, there were three restrictions on the use of third-class bulk rate privileges. First, eligibility was restricted to "qualified organizations"; secondly, the matter to be mailed had to meet specific criteria for size and weight; and finally, the matter had to be *mailed by* the qualified nonprofit organization. Except for the fact that RPA is not a designated qualified organization, the mailing at issue meets these pre-§ 134.57 requirements in all respects.

■ Nevertheless, plaintiffs' contention that the regulation creates a subclass of third-class bulk rate mail is untenable. By merely limiting *whose* mail may be posted at the privileged rates, the regulation imposes no new restrictions on size, weight, content, ease of handling identity of mailer and recipient, or other factor relevant to the makeup of a mail classification. What it does is to construe the three longstanding restrictions on use of the special rates so as not to "grant any undue or unreasonable preferences" to any user. *See* 39 U.S.C. § 403(c). Read literally, prior law would have permitted a qualified nonprofit organization to use its permit to post material belonging to third persons not entitled to the special rates. For USPS to have permitted this "obviously unintended" result, *see Hecht v. Pro-Football, Inc.*, 144 U.S. App.D.C. 56, 444 F.2d 931 (Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972), would have been an egregious breach of its statutory duty. Accordingly, the Court concludes that § 134.57 is not a classification and that, therefore, a PRC recommendation was not a necessary precondition to valid USPS action.

Plaintiffs also contend that even if USPS did have authority to promulgate § 134.57, it did so in violation of the notice and comment requirements contained in chapter 5 of the Administrative Procedure Act, 5 U.S.C. § 553.

Without soliciting public comment, USPS published the regulation in the Federal Register on August 26, 1975, effective immediately. If the notice and comment rule were applicable, USPS's noncompliance would render the regulation invalid. However, relying on § 410 of Title 39, USPS contends that in promulgating § 134.57 it was exempt from these requirements.

■■ § 410 provides that, subject to certain enumerated exceptions not pertinent here, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapter 5 and 7 of title 5, shall apply to the exercise of powers of the Postal Service." Defendants read § 410 as completely exempting USPS from the operation of chapter 5 of Title 5. However, this contention is not supported by simple rules of grammar. According to the terms of § 410, in order to be exempt from chapter 5 of Title 5, a federal law must deal with public or Federal contracts, property, works, officers, employees, budgets or funds. *See, e. g., Chelsea Neighborhood Associations v. USPS*, 516 F.2d 378 (2d Cir. 1975). Inasmuch as § 553 does not, defendants' argument that the APA's notice and comment requirements do not apply to USPS is without merit.

Alternatively, defendants argue that § 134.57 is an "interpretive" regulation, thus falling within one of the statutory exceptions to the notice and comment rules. *See* 5 U.S.C. § 553(b)(A).

■ One of the central purposes of the notice and comment requirements is to allow public participation in the promulgation of rules which have a substantial impact on those regulated. Thus, as a general rule, thirty days notice for solicitation of comments must precede all substantive, or legislative, rules and those interpretive rules which both constitute a change in prior agency position and have a "substantial impact on private rights and obligations."[32] *See* 5 U.S.C. § 553(b)(A); *see also National Motor Freight Traffic Association, Inc. v. United States*, 268 F.Supp. 90 (D.D.C.1967)

---

**32.** K. Davis, Administrative Law of the Seventies § 6.01–.07.

(three-judge court), *affirmed,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968); *Noel v. Chapman,* 508 F.2d 1023 (2d Cir.) *cert. den.,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975); *Eastern Kentucky Welfare Rights Organization v. Simon,* 165 U.S.App.D.C. 239, 506 F.2d 1278 (1974); *vacated on other grounds,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Thompson v. Washington,* 162 U.S.App.D.C. 39, 497 F.2d 626 (1973); *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478 (2d Cir. 1972); *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740 (3d Cir. 1969); *Saint Francis Memorial Hospital v. Weinberger,* 413 F.Supp. 323 (N.D. Cal. 1976); *Nader v. Butterfield,* 373 F.Supp. 1175 (D.D.C.1974); *Pharmaceutical Manufacturers Association v. Finch,* 307 F.Supp. 858 (D.Del.1970).

 "The question whether a rule is legislative or interpretive . . . depends upon whether or not it is issued pursuant to a grant of law-making power." [33] K. Davis, Administrative Law § 5.03. *Cf. Addison v. Holly Hill Fruit Products,* 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944) (rule interpreting statutory term deemed "legislative" where promulgated under express grant of law-making power). No such grant having been made by Congress to USPS, § 134.57 is, under this test, interpretive. Nevertheless, if the rule constitutes a change in prior agency position and has a substantial impact on the rights and obligations of NRTA and AARP, the rule would be invalid for failure to comply with the notice and comment requirements. In view of the fact that the policy underlying § 134.57 has been consistently applied to deny plaintiffs use of the special rate for mailing of the RPS catalog, USPS is, in this case, excused from complying with the notice and comment requirements. Plaintiffs' Motion for Summary Judgment is denied.

 Defendants' Motion for Summary Judgment rests on the simple theory that the challenged regulation was issued under the Postal Service's general rulemaking authority and is consistent with the objectives of the statute as a whole. *See* 39 U.S.C. §§ 401(2), 403(c). Essentially, this proposition flows from the rejection of the three arguments made by plaintiffs in their Motion for Summary Judgment. Although the Court is free to substitute its judgment for that of the agency when ruling on the validity of an interpretive rule, see K. Davis, Administrative Law of the Seventies § 5.05, it finds that § 134.57 fully comports with the spirit of the special rate legislation and was necessary to prevent abuse of the existing program. Since RPS is not qualified to post mail at special bulk third-class rates, the regulation was properly applied.

Defendants' Motion for Summary Judgment is granted.

---

**33.** The Court of Appeals for this Circuit has said that, "[g]enerally speaking, it seems to be established that . . . 'legislative rules' are those which create law . . . whereas interpretive rules are statements as to what the administrative officer thinks the statute or regulation means." *Gibson Wine Co. v. Snyder,* 90 U.S.App.D.C. 135, 137, 194 F.2d 329, 331 (1952). *See Eastern Kentucky Welfare Rights Organization v. Simon, supra; National Association of Insurance Agents, Inc. v. Board of Governers,* 160 U.S.App.D.C. 144, 489 F.2d 1268 (1974); *Pickus v. U. S. Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974). *See also* Attorney General's Manual on the Administrative Procedure Act 30 n. 3 (1947).